NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LEROY BOYD,<br>    Plaintiff,<br><br>v.<br><br>DONNA KELTY, *et al.*,<br>    Defendants. | Civil Action No.: 14-5586 (JLL)<br><br>**OPINION** |

**LINARES**, District Judge.

This matter comes before the Court by way of Defendants Sr. Parole Officer Lt. Donna Kelty, Sr. Parole Officer Jacob, Sr. Parole Officer Kreitz, Sr. Parole Officer Marrone, Sr. Parole Officer Mitchell, and Sr. Parole Officer Santibanez's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 and Local Federal Rule of Civil Procedure 56.1 (ECF No. 51). Plaintiff has not submitted an opposition to said motion. The Court decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants Defendants' Motion for Summary Judgment.

## I. BACKGROUND[1]

On September 8, 2014, Plaintiff instituted the within action alleging that Defendants Giovanni Santibanez and Marsha Mitchell used excessive force while effectuating an arrest warrant at Plaintiff's home. (Def. SMF ¶ 1-2)(citing *generally* Compl.). Plaintiff further alleged that Defendants collectively denied him medical attention for the supposed injuries sustained during the arrest. (Def. SMF ¶ 3). This Court granted Plaintiff's application to proceed *in forma pauperis* and permitted all claims to proceed, except for those against Defendant Carla Shabazz. (Def. SMF ¶ 5). Plaintiff has never attempted to reintroduce claims against Defendant Shabazz. (*See generally* Civ. No. 14-5586).

The factual background surrounding the 2014 arrest is as follows. In 2008, Plaintiff was convicted of eluding law enforcement and operating a vehicle in a reckless manner. (Def. SMF ¶ 9). He received a ten-year prison sentence with a five year [*sic*] parole disqualification term" as a result of the 2008 incident. (Id.). In 2013, Plaintiff became eligible for, and was granted, parole and placed under the supervision of the New Jersey State Parole Board. (Def. SMF ¶¶ 10-11). Plaintiff's parole terms included reporting to his parole officer, refraining from using alcohol and drugs, maintaining gainful employment, avoiding any establishment that served alcohol, and attending a Community Resource Program ("CRC Program"). (Def. SMF ¶ 13).

---

[1] These background facts are taken from the Defendants' statements of material facts, pursuant to Local Civil Rule 56.1. (ECF No. 51-2, Defendants' Rule 56.1 Statement of Facts ("Def. SMF")), as well as Plaintiff's Complaint (ECF No. 1 ("Compl.")). Additionally, the Court notes that, despite *sua sponte* providing Plaintiff with a four-week adjournment of the Motion and Opposition dates (ECF No. 54), Plaintiff has not opposed Defendants' Motion. Since no opposition to Defendants' Motion has been submitted there are no disputes regarding the statements contained in Def. SMF. Accordingly, the Court treats the statements contained in Def. SMF as undisputed. *See* L. Civ. R. 56.1(a)("The opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion; *any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion.*")(emphasis added).

At the time of his arrest, Plaintiff was still under the Parole Board's supervision and was residing at 510 Bond Street in Elizabeth, NJ. (Def. SMF ¶¶ 12, 14). On January 2, 2014, Plaintiff had a face-to-face meeting with Defendants, where he was instructed to report to the CRC Programs seven days a week for thirty days, and was also sanctioned for previously failing to appear at the CRC Program and reporting to his parole officer. (Def. SMF ¶¶ 15-16). On January 7, 2014, the Parole Board attempted to visit Plaintiff's home, after he failed to appear at the CRC Program without giving advanced notice. (Def. SMF ¶ 17). Plaintiff did not answer the door, and reporting instructions were left at the front door. (Id.). Defendants attempted another unsuccessful visit on January 9, 2014, and unsuccessfully tried to follow up with Plaintiff via text messages. (Def. SMF ¶ 18). On that same date, Defendant Santibanez left an additional reporting notice at Plaintiff's home that advised that Defendants did not know where Plaintiff was. (Def. SMF ¶ 20).

On January 16, 2014, the Parole Board issued an arrest warrant due to Plaintiff's failure to report to the "Day Reporting Center program," since Plaintiff's failure to report was considered a serious and/or persistent violation of the terms of his parole. (Def. SMF ¶¶ 21, 22). Said warrant was signed by Defendant Kelty and assigned to be effectuated by "Parole District Office 5, which [] Defendants are or were a part [of]." (Def. SMF ¶¶ 24-25).

Pursuant to the warrant, Defendants Kelty, Jacob, Kreitz, Marrone, Mitchell, and Santibanez reported to Plaintiff's home. (Def. SMF ¶ 26). Defendants Kelty and Jacob were stationed at the back of the home while Defendant Marrone was stationed at the front of them home. (Def. SMF ¶¶ 28-29). (Def. SMF ¶ 29). When the aforementioned Defendants were in place, Defendants Santibanez, Kreitz, and Mitchell knocked of Plaintiff's front door and spoke with a woman who identified herself as Plaintiff's sister's friend. (Def. SMF ¶¶ 30-31). This

unidentified woman granted Defendants Santibanez, Kreitz, and Mitchell access to the home. (Def. SMF ¶ 31). Upon entering the home, Defendants Santibanez, Kreitz, and Mitchell spoke with Plaintiff's sister, Nacolia Boyd, in the stairwell and explained that they were there to effectuate the arrest warrant. (Def. SMF ¶¶ 33).

Defendants Santibanez, Kreitz, and Mitchell proceeded up to the second floor where they observed Plaintiff laying on a mattress on the floor with a woman. (Def. SMF ¶¶ 34-35). The woman was ordered out of the room. (Def. SMF ¶ 36). At first, Plaintiff had his eyes closed and his arms tucked underneath him. (Def. SMF ¶ 37). Defendant Santibanez announced his presence to Plaintiff, indicated he was there to effectuate the arrest warrant, and ordered Plaintiff to stand up. (Def. SMF ¶ 38). This command was ignored by Plaintiff, as Plaintiff merely raised his head, looked at the officers, and then lowered it back down to the mattress. (Def. SMF ¶ 39-40).

Thereafter, Defendant Santibanez observed Plaintiff reach into his waist area, prompting Defendant Santibanez to approach Plaintiff and attempt to stand him up. (Def. SMF ¶¶ 42-43). At this time, Plaintiff began resisting arrest with physical force, causing Defendants Santibanez and Mitchell to hold him still. (Def. SMF ¶ 44). Plaintiff continued to resist the arrest, and, at one point caused the arresting Defendants to fall to the ground with him. (Def. SMF ¶¶ 45, 47). Plaintiff's sister observed the arrest and recounted that Plaintiff did in fact resist same despite her pleas for him to "calm down." (Def. SMF ¶ 48).

After approximately five minutes of struggle, Plaintiff was eventually handcuffed. (Def. SMF ¶¶ 49-50). Defendants Santibanez, Kreitz, and Mitchell attempted to escort Plaintiff out of the bedroom, at which time Plaintiff stated he was not leaving and further resisted Defendants. (Def. SMF ¶¶ 51-52). Plaintiff then head-butted Defendant Santibanez and said "that's resisting"

4

arrest. (Def. SMF ¶ 53). Ultimately, Plaintiff was escorted out of the home and placed in the back of a transportation vehicle. (Def. SMF ¶ 54). Plaintiff kicked Defendant Santibanez in the face as Defendant Santibanez was attempting to fasten Plaintiff's seatbelt. (Def. SMF ¶ 55).

"A review of Defendants' actions revealed that [D]efendants Santibanez, Mitchell, and Kreitz used an appropriate level of force due to Plaintiff's combative behavior. (Def. SMF ¶ 57). Indeed, Defendants only used physical force and no form of mechanical force, such as objects or weapons. (Def. SMF ¶ 58). An internal report listed Defendant Kreitz as a defendant who used force, but Plaintiff has not alleged, no is there evidence to support, that Defendant Kreitz ever came into contact with Plaintiff. (Def. SMF ¶ 60). None of the Defendants used any hand strikes, objects, or weapons when subduing Plaintiff, and Plaintiff has conceded that Defendants Jacob, Marrone, and Kelty never utilized force in restraining him. (Def. SMF ¶¶ 61-62). At no point did Plaintiff ever request any medical attention. (Def. SMF ¶¶ 64-66).

After being secured in the transportation vehicle, Plaintiff was transported to Union County Jail and then to Trinitas Medical Center by Defendants Santibanez and Jacob. (Def. SMF ¶¶ 67-68). During the transportation, Plaintiff made verbal threats against Defendants Santibanez and Jacob. (Def. SMF ¶ 69). Additionally, "Plaintiff ... [expressed] anger during the [transportation] by yelling and later kicking the inside of the transportation vehicel [*sic*]." (Def. SMF ¶ 70). Prior to being admitted, "Defendants called for emergency monitoring officers to assist them because Plaintiff was still behaving uncooperatively, specifically by failing to comply with orders to exit the vehicle." (Def. SMF ¶ 77). While waiting for the emergency monitoring officers, Plaintiff scratched his face with a seatbelt causing his face to bleed. (Def. SMF ¶ 78).

While at Trinitas, medical professionals noted Plaintiff had some bruising above his left eyebrow, as well as tenderness on the bridge of his nose. (Def. SMF ¶ 80). Plaintiff underwent a CT Scan of his head, which was unremarkable, and received wound care. (Def. SMF ¶¶ 81-82). At no point during his treatment did Plaintiff indicate any respiratory issues or loss of consciousness. (Def. SMF ¶ 83). Indeed, his medical records contain no evidence Plaintiff was ever placed in a choke hold. (Def. SMF ¶ 84). Plaintiff was cleared for incarceration and was transported back to the Union County Jail. (Def. SMF ¶¶ 84-87).

While Plaintiff testified at his deposition that he suffered from a bruised wrist from the handcuffs being applied tightly and a left eye injury, his medical records do not support said contentions. (Def. SMF ¶¶ 88-89). Moreover, as of time this application by Defendants, Plaintiff has not reported any eye issues. (Def. SMF ¶ 90). Plaintiff also claimed he suffered a "tooth injury," but his medical records do not corroborate that claim either. (Def. SMF ¶¶ 91-95). No expert has opined that Plaintiff suffered any trauma by any third-party, including Defendants, nor do his medical records support such contentions. (Def. SMF ¶¶ 96-99).

## II. LEGAL STANDARD

Summary judgment is appropriate when, drawing all reasonable inferences in the non-movant's favor, there exists no "genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "[T]he moving party must show that the non-moving party has failed to establish one or more essential elements of its case on which the non-moving party has the burden of proof at trial." *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 424 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party. *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). If a reasonable juror could return a verdict for the non-moving party regarding material disputed factual issues, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 242-43 ("At the summary judgment stage, the trial judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

### III. ANALYSIS

Defendants move for judgment as a matter of law for the following reasons: 1) any claims against any Defendant acting in his or her official capacity must be dismissed because state officials acting in their official capacity are not "persons" for purposes of § 1983 claims; 2) Defendants cannot be held liable for excessive force claims because their actions were reasonable under the circumstances; 3) Defendants Santibanez and Mitchell did not use excessive force and therefore there was no unconstitutional act on their part; 4) Plaintiff has failed to show any evidence that he was unconstitutionally denied medical care; 5) Plaintiff has failed to show that Defendant Kelty should be liable for unconstitutional violations in a supervisory capacity; and 6) Defendants are entitled to qualified immunity. The Court agrees with Defendants and addresses each argument separately below.

Section 1983 provides, in relevant part:

> *Every person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983 (emphasis added). Therefore, to state a claim for relief under § 1983, a plaintiff must allege two elements: (1) *a person* deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994)(emphasis added). It has long been established that "neither a State *nor its officials acting in their official capacities* are 'persons' under § 1983." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989)(emphasis added); *Grabow v. Southern State Correctional Facility*, 726 F. Supp. 537, 538-39 (D.N.J. 1989); *see Marsden v. Federal BOP*, 856 F. Supp. 832, 836 (S.D.N.Y. 1994); *see also Mitchell v. Chester County Farms Prison*, 426 F. Supp. 271, 274 (E.D. Pa. 1976).

As Defendants correctly note, Plaintiffs Complaint fails to identify whether he seeks damages from Defendants in their official or individual capacities. However, should Plaintiff seek compensation for actions taken by Defendants in their official capacities, such claims are barred. This is because Defendants, acting in their official capacities, are not persons for purposes of § 1983 claims. Accordingly, Defendants are all entitled to judgment as a matter of law for any claims relating to their actions in their official capacities.

The Fourteenth Amendment prohibits the use of force against a pre-trial detainee where that force amounts to punishment. *See Jackson v. Phelps*, 575 F. App'x 79, 83 (3d Cir. 2014). When assessing whether an excessive force claim is viable, the Court must ask whether, "from the perspective of the officer at the time of the incident and not with the benefit of hindsight," the officers were objectively reasonable in their use of force. *Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015) (citing *Maryland v. Garrison*, 480 U.S. 79, 85, 107 S. Ct. 1013, 94 L. Ed. 2d 72,

(1987)). This is a "highly individualized and fact specific" inquiry, in which the Court must examine the "totality of the circumstances," including "(1) the severity of the crime at issue, (2) whether the suspect poses an imminent threat to the safety of the police or others in the vicinity, and (3) whether the suspect attempts to resist arrest or flee the scene." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

The Third Circuit has identified a non-exhaustive list of factors to determine whether the force employed during an arrest was reasonable. These factors include: (1) the severity of the crime at issue; (2) *whether the suspect poses an immediate threat to the safety of the officer* or others; (3) *whether the suspect is actively resisting being seized* or attempting to evade seizure by flight; (4) *the possibility that the suspect is violent or dangerous*; (5) the duration of the police action; (6) *whether the police action takes place in the context of effecting an arrest*; (7) the possibility that the suspect may be armed; and (8) the number of persons the officer must contend with at one time. *Kopec v. Tate*, 361 F.3d 772, 776-77 (3d Cir. 2004)(emphasis added). Not all of these factors are relevant in all cases, and other factors may be considered. *Id.* In addition, courts have held that the presence or *absence of a physical injury is a factor in determining the reasonableness of a law enforcement officer's use of force. See Velius v. Twp. of Hamilton*, 754 F. Supp. 2d 689, 694 (D.N.J. 2010), *aff. in relevant part*, 466 Fed. App'x. 133, 136-37 (3d Cir. 2012)(emphasis added).

Here, there is no dispute that Plaintiff was both nonresponsive to Defendants, as well as combative. (Def. SMF ¶¶ 45-78). Plaintiff initially refused to respond Defendants' commands, despite the fact that they announced they were there to effectuate an arrest warrant. (Def. SMF. ¶¶ 38-43). After acting inappropriately, Defendants attempted to stand Plaintiff up off his mattress,

which is when he began to physically resist. (Def. SMF ¶¶ 44-47). When Plaintiff was finally in handcuffs he refused to leave his home. (Def. SMF ¶¶ 51-53). Once placed in the transportation vehicle, Plaintiff became angry, yelled at Defendants, and kicked the inside of the vehicle. (Def. SMF ¶¶ 52-55).

None of the evidence in this matter indicate that any Defendant acted in an inappropriate manner. Indeed, there is no evidence Defendants struck Plaintiff or used force in excess of that which was necessary to effectuate the arrest. There is no evidence that Plaintiff sustained any injury, aside from those which were self-inflicted. Rather, the record shows that Plaintiff acted in a threatening manner toward Defendants which placed their safety at risk. The evidence also indicates that when Defendants approached Plaintiff, that Plaintiff acted in a dangerous manner toward Defendants and was combative. All of Defendants interactions with Plaintiff were in connection with their attempts to effectuate a lawful arrest. Thus, the Court concludes that there is no genuine issue of material fact that Defendants did not use excessive force and that they are entitled to judgment as a matter of law on said claim. This analysis extends to Defendants Santibanez and Mitchell and thus disposes of Defendants' third argument in support of summary judgment as well.

The Court applies the Fourteenth Amendment's "deliberate interference" standard to Plaintiff's claims for inadequate medical care during the course of his arrest. *See Smith v. Gransden*, 553 Fed. Appx. 173, 177 (3d Cir. 2014)(holding that "[d]*eliberate indifference* to the medical needs of arrestees violates their Fourteenth Amendment right to due process")(emphasis added); *see also Suarez v. City of Bayonne*, 566 Fed. Appx. 181, 187 (3d Cir. 2014)(applying the deliberate indifference standard to a plaintiff's claim for denial of medical care allegedly suffered

during the course of an arrest). Pursuant to the deliberate interference standard, a plaintiff must provide evidence of "(i) *a serious medical need*, . . . (ii) *acts or omissions by [law enforcement] officials that indicate deliberate indifference to that need*, . . . and (iii) a causal connection between the indifference and the plaintiff's injury." *Smith*, 553 Fed. Appx. at 177 (emphasis added)(internal citations and quotations omitted). This standard also governs a pretrial detainee's denial of medical care claim. *See Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003). The Third Circuit has explained that "[a] medical need is serious . . . *if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention*." Monmouth Cty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987)(emphasis added).

Here, Plaintiff has produced no evidence that he suffered from any injury, let alone one that required serious medical attention. Rather, the record indicates that, after being examined by medical professionals, it was determined that Plaintiff's health was unremarkable. (Def. SMF ¶¶ 80-84). Indeed, after being examined at Trinitas, Plaintiff was cleared for incarceration, and the only injury noted was Plaintiff's self-inflicted face laceration. (Def. SMF ¶¶ 84-88). Accordingly, Plaintiff was not in need of serious medical attention, and was provided with adequate medical treatment for any ailments that were manifest at the time of his arrest. Because Plaintiff cannot demonstrate a serious medical ailment, let alone a serious medical need, Plaintiff cannot maintain a failure to provide adequate medical care claim against Defendants and the claim is dismissed.

Additionally, while it is possible to raise Constitutional violation claims against a supervisory defendant, such as Defendant Kelty herein, a "defendant in a civil rights action *must have personal involvement in the alleged wrongs*" and a plaintiff must therefore provide evidence

11

of a supervisory defendant's involvement in the alleged violation through means other than vicarious liability. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988)(emphasis added). Generally, a plaintiff must therefore show each supervisor's participation in the alleged wrong by pleading either that the supervisor's "establishment of policies, practices or customs . . . directly caused the constitutional violation[,] personal liability based on the supervisor participating in the violation of [the p]laintiff's right, [that the supervisor] direct[ed] others to violate [the p]laintiff's rights, or [that the supervisor had actual] knowledge of and acquiesc[ed] to a subordinate's conduct." *Doe v. New Jersey Dep't of Corr.*, 2015 U.S. Dist. LEXIS 69569, 2015 WL 3448233, *9 (D.N.J. May 29, 2015)(quoting *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316-20 (3d Cir. 2014), *rev'd on other grounds*, 135 S. Ct. 2042 (2015)); *see also Tenon v. Dreibelbis*, 606 F. App'x 681, 688 (3d Cir. 2015)(hold that a § 1983 plaintiff pleading supervisory liability must establish defendant's "participation [in the alleged wrong], or actual knowledge and acquiescence, to be liable").

Where a Plaintiff's policy-based supervisory liability claim arises out of an alleged failure by a supervisor to train or correct the behavior of his subordinates, the plaintiff must establish that the supervisor's actions "amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Connick v. Thompson*, 563 U.S. 51 (2011)(quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Deliberate indifference is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* (quoting *Bd. Of County Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)). Thus, the Defendant's alleged inaction must be severe enough to be the "functional equivalent of a decision by the [supervisor] to violate the Constitution." *Id.* at 61-62

(Canton, 489 U.S. at 395). Generally, establishing deliberate indifference requires that a plaintiff plead facts showing a "pattern of similar constitutional violations by untrained employees." *Id.* at 62.

Here, the evidence in the record simply does not support Plaintiff's claims against Defendant Kelty, in her role as a supervisor. No evidence can even be vaguely connected to Defendant Kelty's involvement in any of Plaintiff's claims. Indeed, Plaintiff cannot point to a single action or inaction on behalf of Defendant Kelty that could support a claim that she failed to properly supervise Defendants. More so, the record is bare of any evidence that there is, or ever was, any pattern of similar constitutional violations by Defendant Kelty's supposedly untrained subordinates. The record does not even indicate that Defendant Kelty's department possibly has any unconstitutional policies or procedures that pertain to Plaintiff's claims. Hence, all claims against Defendant Kelty, in her supervisory capacity, must be dismissed.

Finally, any claims against Defendants in their individual capacities also fail, as they are entitled to qualified immunity. Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established ... constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). *"For qualified immunity to attach, an official must demonstrate his conduct was objectively reasonable."* *Id.* at 818-19 (emphasis added). Qualified immunity is unavailable to a defendant government official if plaintiff's complaint meets two prongs: (1) *the facts alleged by plaintiff show the violation of a constitutional right*; and (2) the plaintiff's constitutional right was clearly established at the time of the violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001)(emphasis added), overruled in part on other grounds by *Pearson v. Callahan*, 555 U.S. 223 (2009)("If no

constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."); *George v. Rehiel*, 738 F.3d 562, 572 (3d Cir. 2013).

Here, Defendants are entitled to qualified immunity for two reasons. First, as explained above, none of the evidence in the record indicates that any Defendant violated Plaintiff's Constitutional rights. Moreover, even if this Court were to agree that Defendants violated Plaintiff's Constitutional rights, which is does not, the Court has already concluded that Defendants actions were reasonable given the circumstances. As detailed, Plaintiff's actions were combative and threatening during the time of his arrest by Defendants. Plaintiff was hostile and posed a threat to Defendants. Despite this threat, Defendants never took any action that could objectively be viewed as excessive or unnecessary. Rather, Defendants expressed restraint and poise during the arrest process. Accordingly, no claim may lie against Defendants in their individual capacity.

## IV. CONCLUSION

For the aforementioned reasons, Defendants' Motion for Summary Judgment is granted in its entirety and Plaintiff's complaint against Defendants is hereby dismissed with prejudice. An appropriate Order accompanies this Opinion.

DATED: April 27, 2017

JOSE L. LINARES
UNITED STATES DISTRICT JUDGE